IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-163-004 |
| | ) | |
| JARED Eck | ) | |
| | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, and Rebecca L. Silinski, Assistant United States Attorney for said District, and submits this Sentencing Memorandum to the Court:

### I.    INTRODUCTION

On November 20, 2019, the Defendant, Jared Eck, entered a plea of guilty to Count One of the Indictment in this case. The sentencing hearing is presently scheduled for February 22, 2022, before this Honorable Court. In advance of the sentencing hearing, the prosecution submits this memorandum, addressing the Section 3553(a) factors as well as Mr. Eck's request for a variance. In sum, the United States recognizes that Mr. Eck's request for a variance, which includes a fine of $50,000, may be warranted.

### II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On June 4, 2019, a federal grand jury sitting in the Western District of Pennsylvania, returned a two-count Indictment, charging four individuals with violations of federal drug laws. Mr. Eck was charged in Count One of the Indictment – that is, conspiring to distribute 100 kilograms or more of marijuana from April 2019 to May 2019. On June 12, 2019, following his arrest, Mr. Eck made his initial appearance, pled not guilty and was released on pre-trial supervision.

On November 20, 2019, Mr. Eck pled guilty as charged, pursuant to a written plea agreement between the United States and Mr. Eck.

As a result of an investigation, conducted by the Greater Pittsburgh Safe Streets Task Force, led by the Federal Bureau of Investigation, Mr. Eck was identified as a marijuana distributor/supplier, in the Greater Pittsburgh Region. The investigation initially related to drug-trafficking activity occurring in the Western District of Pennsylvania, specifically in the Braddock section of Pittsburgh. Law enforcement identified several individuals, suspected at the time, of illegally distributing controlled substances in the Greater Pittsburgh Region, as members of a neighborhood-based street gang, self-titled "SCO." As a result of this investigation, from January of 2019 through May of 2019, investigators obtained nine (9) Title III wiretap authorizations.

While intercepting communications over telephones used by Howard McFadden, SCO's leader and a defendant in a related case, Crim. No. 19-162, law enforcement identified Chadlin Leavy as one of McFadden's heroin and cocaine sources of supply. In April of 2019, investigators obtained authorization for the interception of wire and electronic communications over a telephone operated by Chadlin Leavy. In addition to cocaine and heroin, investigators learned that Mr. Leavy distributed marijuana. This, then, led to identifying Mr. Leavy's source of supply as the defendant, Jared Eck.

Intercepted communications revealed that Mr. Eck met Mr. Leavy on Fridays to be resupplied with marijuana and the two would communicate via wire and electronic communications to arrange their meetings. The investigation further revealed that prior to meeting Mr. Leavy, Mr. Eck either met with his supplier to obtain marijuana, or to his stash house.

Law enforcement obtained a tracker and ping warrant on Mr. Eck's truck and phone, respectively. In conjunction with the intercepted communications as well as data obtained from

the tracker and ping, law enforcement conducted physical surveillance, at 5524 Covode Street, in Squirrel Hill – a distribution location used by members of the conspiracy, including Mr. Wayne Barker, who worked for Mr. Daniel Muessig, Mr. Eck's source of supply.

While conducting surveillance, multiple individuals, including Mr. Eck, were observed carrying large black trash bags, usually with a green sticker/label on the bag to identify the strain of marijuana, out of Mr. Barker's stash house and placing them into their vehicles, which they parked on the street outside of the residence.

On May 10, 2019, law enforcement conducted surveillance on both Mr. Leavy and Mr. Eck, in conjunction with intercepted communications, and confirmed that Mr. Leavy would be obtaining 25-30 lbs of marijuana from Mr. Eck in two allotments and would pay Mr. Eck $30,000 up front.  In conjunction with a lawful traffic stop and search of the vehicle, driven by Mr. Leavy, law enforcement seized was $30,000.

On May 24, 2019, based upon information obtained through the wire, suggesting that Mr. Leavy and Mr. Eck were going to meet, law enforcement obtained several federal search warrants, including for locations known to be used by Mr. Eck.  Law enforcement obtained, from the locations associated with Mr. Eck, the following items: seven (7) firearms, items used in drug packaging and distribution, suspected marijuana, and approximately $7,975.00 in US Currency.

### III.    APPLICABLE SENTENCING GUIDELINES RANGE

The United States Supreme Court has instructed that "district courts must begin their [sentencing] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 133 S.Ct. 2072, 2083 (2013) (quoting *Gall v. United States*, 522 U.S. 38, 49 (2007)).  Sentencing decisions are to be "anchored by the Guidelines," and appellate courts may presume that Guidelines sentences are reasonable.  *Peugh*, 133 S.Ct. at 2083.  When

considering a sentence outside of the Guidelines Range, the Court "must consider the extent of the deviation and ensure that the justification *is sufficiently compelling* to support the degree of the variance." *Id*. (citing *Gall*, 522 U.S. at 50) (emphasis added). "For even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 522 U.S. at 47 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)).

In this case, the Guidelines Range recommends a term of imprisonment of 12 to 18 months' imprisonment; alternatively, because Mr. Eck's adjusted total offense level falls within Zone C of the Sentencing Table, the minimum term may also be served by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment. *See* USSG §5C1.1(d). This Guideline Range accounts for the controlled substances Mr. Eck was personally responsible for distributing, a two-level reduction for meeting the "safety valve" criteria set forth in §5C1.2(1)-(5), as well as a three-level reduction for acceptance of responsibility, pursuant to §§3E1.1(a) and 3E1.1(b).

## IV.     DEFENDANT'S REQUEST FOR A VARIANCE

A "variance" outside of the Guideline Range refers to the selection of a sentence outside of the advisory Guidelines range based upon the Court's weighing of one (1) or more of the sentencing factors in Section 3553(a). *See United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011), as amended (Sept. 15, 2011); *United States v. Grams*, 566 F. 3d 683, 686-87. Post-*Booker*, a court has "the discretion to craft an appropriate sentence falling anywhere within the range of punishments authorized by Congress." *United States v. Ausburn*, 502 F. 3d 313, 327 (3d Cir. 2007). Here, Mr. Eck has requested a variance from the applicable guideline range of 12-18

4

months' imprisonment to a non-custodial sentence of probation and a $50,000 fine, based upon his role in the offense, history and characteristics, including steady and current employment. The United States recognizes that these factors, collectively, can provide the Court with a basis to vary from the Guideline Range. Thus, if the Court is inclined to grant a variance, it would not create an unwarranted sentencing disparity nationally or among other co-defendants who have not yet been sentenced.

## V. SECTION 3553 FACTORS

The factors cited under Title 18, United States Code, Section 3553(a) support the government's position regarding the appropriate sentence in this case.

**(1) 18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

**(a) The Nature and Circumstances of the Offense**

As set forth above, Mr. Eck was involved in a drug conspiracy to illegally distribute substantial quantities of marijuana. While not the main distributor, Mr. Eck obtained substantial quantities of marijuana that he then redistributed. That is, obtaining enough garbage bags full of marijuana to fill the bed of his F-150, during one trip to the Covode Street distribution house:



And while, to Mr. Eck, it may be *just* marijuana, the reality is that the marijuana he sold to Leavy was then sold to, among others, McFadden, who used the profits from the marijuana sales to finance his heroin and cocaine trafficking operation – the drugs that Mr. Eck points out cause overdoses and deaths.

### (b)     History and Characteristics of the Defendant

The Presentence Investigation Report (PSIR) in this case details factors regarding Mr. Eck's positive family life, steady (and successful) employment, as well as a life free from addiction and prior encounters with the law.  Mr. Eck is uncharacteristic of many drug traffickers who appear before the Court – in this case, and generally.  Notwithstanding a well-paying job, Mr. Eck wanted more money.  And despite his hard work in other areas of life, he decided to take a shortcut when it came to getting that money by selling narcotics illegally.

### (2)     18 U.S.C. § 3553(a)(2)(A) – The Need for the Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law And To Provide Just Punishment For The Offense

The crime for which Mr. Eck has pled guilty, a violation of federal narcotics law, is a serious crime and, as Mr. Eck points out, will result in a federal felony conviction on his record. In connection with his guilty plea, Mr. Eck admitted his involvement in conspiring to distribute marijuana.  The individuals he associated with, including Mr. Leavy, as this Court is well-aware, were responsible for injecting substantial amounts of marijuana as well as heroin and cocaine into the community.  Mr. Eck admitted that the amount of marijuana he was personally responsible for distributing was 53 kilograms or approximately 116 pounds of marijuana in a month.  It is the government's position that the Guideline Range, of 12-18 months, adequately accounts for Mr. Eck's offense conduct, including the two-level reduction pursuant to the "safety valve" provision of the Guidelines, as well as his acceptance of responsibility, sending a clear message that this is

a serious offense that is being met with a just punishment.  The government recognizes, however, that penalizing Mr. Eck by imposing a fine and possibly a term of home detention, may fit *this* defendant's crime.  Based upon Mr. Eck's financial information, as detailed in the PSIR, a fine of at least $50,000 would result in drawing from his 401k (in its entirety) and a portion of his Roth IRA.

       (3)       **18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct**

The United States hopes that Mr. Eck's early acceptance of responsibility for his actions, including admitting to the government his involvement during his "safety valve" proffer, is a sign that Mr. Eck intends on staying on the "right" side of the law going forward and will continue to be an otherwise productive member of society upon his release.  Even so, "[drug] trafficking and abusing illicit drugs destroy neighborhoods, contribute to violence and victimization, and often ruin the lives of drug users and their families."  *Drugs*, Community Oriented Policing Services, United States Department of Justice, https://cops.usdoj.gov/drugs.  Given the many societal problems associated with drug trafficking, deterring others from putting illicit drugs onto the streets, in the first place, is paramount.  Thus, the United States respectfully requests that the Court impose a sentence that will sufficiently penalize Mr. Eck's conduct to not only deter him, but others who may look at this sentence, if only a term of probation, and determine that that is worth the risk for them.

       (4)       **18 U.S.C. § 3553(a)(2)(C) – The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

Here, Mr. Eck has remained compliant with his bond conditions while on pre-trial and pre-sentence supervision.  The Court can ensure that Mr. Eck continues to abide by the law by

imposing a sentence of probation, which carries the possibility that if he were to violate the terms of his probation, he could be imprisoned.

> **(5)  18 U.S.C. § 3553(a)(3), (4) – The Kinds of Sentence and the Sentencing Range Established by the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

Here, the parties have agreed, pursuant to the terms of the plea agreement, and with the recommendations made by the Probation Office that Mr. Eck is subjected to a total offense level of 13, which carries a Guideline Range of imprisonment of 12 to 18 months' imprisonment; although, both parties remain able to argue for a variance and/or departure if warranted.

Where, as here, however, the defendant has a criminal history category of I and a total offense level of 13, which falls within Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG §5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d).  *See* Doc. No. 161, ¶ 61.

> **(6)  18 U.S.C. § 3553(a)(5) – Any Pertinent Policy Statement**

There are no pertinent policy statements applicable to this defendant.

> **(7)  18 U.S.C. § 3553(a)(6) – The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

The Guideline Range established per the terms of the plea agreement and as set forth in PSIR reflects Mr. Eck's role within the conspiracy and conduct as a whole and sentencing him within the Guideline Range would not result in an unwarranted sentencing disparity.  To the extent the Court chooses to vary below the Guideline Range, and impose a term of probation along with

a substantial fine, the nature and circumstances of Mr. Eck's offense along with his history and characteristics are unique to him and, thus, would not create an unwarranted sentencing disparity.

**(8)     18 U.S.C. § 3553(a)(7) – The Need To Provide Restitution To Any Victims Of The Offense**

Restitution is not applicable in this case.

Respectfully submitted,

CINDY K. CHUNG
United States Attorney

*/s/ Rebecca L. Silinski*
REBECCA L. SILINSKI
Assistant United States Attorney
PA ID No. 320774
